**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **ROGER W. MILLER,** | |
| Plaintiff, | CIVIL ACTION NO. 3:10 cv 00473 |
| v. | Judge James G. Carr |
| **WHIRLPOOL CORPORATION,** | |
| Defendant. | |

**DEFENDANT WHIRLPOOL CORPORATION'S ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Defendant, Whirlpool Corporation ("Defendant" or "Whirlpool"), by its undersigned counsel, submits its Answers to Plaintiff's First Set of Interrogatories as follows:

**GENERAL OBJECTIONS**

1. Defendant generally objects to Plaintiff's Interrogatories to the extent they seek information protected by the attorney-client privilege and/or work-product doctrine. Defendant's Answers are subject to and do not waive said privilege/doctrine.

2. Defendant generally objects to Plaintiff's Interrogatories on the grounds that they are overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence to the extent they seek information regarding claims beyond the allegations in Plaintiff's Complaint. Unless otherwise stated, Defendant's responses are limited to information regarding those claims.

PLAINTIFF'S EXHIBIT
A
tabbies

3. Defendant generally objects to Plaintiff's Interrogatories to the extent that they seek to impose obligations beyond the requirements of the Federal Rules of Civil Procedure and the Local Rules.

4. To the extent that these Interrogatories seek information outside the scope of Defendant's Clyde Division, Defendant objects to these Interrogatories on the grounds that they are overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence.

Subject to and without waiving its General Objections, Defendant further objects and answers as follows:

**Interrogatories**

**INTERROGATORY NO. 1:** Please identify each employee of Defendant and/or consultant to Defendant who was involved in the decisionmaking process on administering the Medical Examination/Fit-For-Duty questionnaire to Plaintiff and his coworkers, indicating for each what role that individual played in the process; when the individual played that role; whether the individual communicated in writing and/or through electronic communications during the process and, if so, the date(s), addressee(s), and content of each writing and/or communication and, if it remains accessible to Defendant, its location, and, if no longer accessible, the date and circumstances under which it became inaccessible.

**ANSWER:** Defendant objects to this Interrogatory because it is vague and ambiguous as to the phrase "consultant" and is overly broad and unduly burdensome as it calls for an exhaustive narrative of information. Subject to and without waiving this objection or the General Objections, Defendant states that individuals with knowledge of the administration of the Medical Examination/Fit-For-Duty questionnaire have been identified in its Rule 26 Disclosures, and documents relating to the administration of the Medical Examination/Fit-For-Duty questionnaire have been produced contemporaneously herewith in response to Plaintiff's First Request for Production of Documents.

**INTERROGATORY NO. 2:** Please state whether Defendant ever suspected that Plaintiff operated a powered industrial vehicle at Defendant's workplace in an unsafe, improper, and/or questionable manner, and, if so, please state the material facts supporting each such suspicion, indicating for each the date the powered industrial vehicle was so operated; identify those persons who witnessed the operation; a description of the operation and the result of the operation and/or each communication and/or document made regarding the operation.

**ANSWER:** Defendant objects to this Interrogatory because it is irrelevant and not reasonably calculated to lead to the discovery of relevant or admissible evidence in that Defendant's certification process for drivers of its powered industrial vehicles ("PIVs") was required for all PIV drivers regardless of their PIV driving history at Whirlpool. Subject to and without waiving this objection or the General Objections, Defendant states that it had reason to believe Plaintiff's operation of a PIV may have been unsafe because of his persistent refusal to complete Defendant's Medical Examination/Fit-For-Duty questionnaire.

**INTERROGATORY NO. 3:** Please state whether Defendant ever suspected that Plaintiff was incapable of performing his job duties in a competent fashion, and, if so, please state the material facts supporting each such suspicion, indicating for each the date that suspicion arose; the conduct, event, and/or communicating giving rise to the suspicion; identify those persons who witnessed the conduct and/or event and/or communicated; and/or each document made regarding the suspicion.

**ANSWER:** Defendant objects to this Interrogatory because it is irrelevant and not reasonably calculated to lead to the discovery of relevant or admissible evidence in that completion of Defendant's certification process for drivers of its PIVs was required for all PIV drivers regardless of their prior job performance. Subject to and without waiving this objection or the General Objections, Defendant states that Plaintiff failed to perform his job duties within Defendant's legitimate expectation in that he refused to complete Defendant's Medical Examination/Fit-For-Duty questionnaire which was a job requirement for all PIV drivers.

**INTERROGATORY NO. 4:** Please state whether Defendant contends that each of the thirty-four (34) inquiries regarding health history on the Medical Examination/Fit-For-Duty questionnaire Defendant required Plaintiff to complete related to his and/or his coworkers' ability to perform job duties competently and/or safely, and, if so, please state for each, how it relates to that ability;

**ANSWER:** Defendant objects to this Interrogatory to the extent it is asking for an exhaustive narrative of every way that the inquiries in the Medical Examination/Fit-For-Duty questionnaire relate to a PIV driver's ability to drive a PIV in a safe manner. Subject to and without waiving this objection or the General Objections, Defendant states that the inquiries contained in the Medical Examination/Fit-For-Duty questionnaire (and the answers thereto) relate to a PIV driver's ability to drive PIVs in a safe manner. Further answering, Defendant refers Plaintiff to the following summary, which does not necessarily include every reason for asking the inquiries as set forth below and may not necessarily set forth the main reason(s) for making these inquiries.

- Any illness, injury, or past accident? If so, any illness, injury, or past accident work-related?- May reveal an underlying medical condition or the taking of certain medications (*e.g.*, sedating medications) that could impact a PIV driver's ability to drive PIVs in a safe manner.

- Any surgery or been hospitalized?- May reveal a restriction in a PIV driver's movement or the taking of certain medications (*e.g.*, sedating medications) that could impact a PIV driver's ability to drive PIVs in a safe manner.

- Any allergies?- May reveal the taking of certain medications (*e.g.*, sedating medications) that could impact a PIV driver's ability to drive PIVs in a safe manner; may also reveal adverse allergic reactions to environmental allergens to which PIV drivers may be exposed.

- Are you under a doctor's care or being treated at the present time?- May reveal an underlying medical condition or the taking of certain medications (*e.g.*, sedating medications) that could impact a PIV driver's ability to drive PIVs in a safe manner.

- Have you left employment or the military due to medical reasons?- May reveal an underlying medical condition or the taking of certain medications (*e.g.*, sedating medications) that could impact a PIV driver's ability to drive PIVs in a safe manner.

- Skin disorders?- May reveal an underlying medical condition or the taking of certain medications (*e.g.*, sedating medications) that could impact a PIV driver's ability to drive PIVs in a safe manner. For instance, certain medical conditions manifest in the form of rashes or hives. The presence of such skin disorders may reveal an underlying medical condition, such as lupus.

- Head/Brain injuries, disorders or illnesses?- May reveal an underlying medical condition or the taking of certain medications (*e.g.*, sedating medications) that could impact a PIV driver's ability to drive PIVs in a safe manner; may reveal decreased reaction time or other cognitive issues.

- Seizures/epilepsy?- May reveal an underlying medical condition or the taking of certain medications (*e.g.*, sedating medications) that could impact a PIV driver's ability to drive PIVs in a safe manner; may reveal a history of lost consciousness; may result in discussions regarding whether the seizures are controllable.

- Eye disorders or impaired vision?- May reveal issues relating to peripheral vision, depth perception, and viewing colors.

- Ear disorders, loss of hearing or balance?- May reveal issues relating to hearing other PIVs, pedestrians, or verbal instructions or warnings; may reveal general issues communicating under noisy conditions.

- Heart disease, heart attack, other cardiovascular condition?- May reveal the taking of certain medications (*e.g.*, sedating medications) that could impact a PIV driver's ability to drive PIVs in a safe manner; may reveal prior history of incapacitation.

- Heart surgery (valve replacement, bypass, etc.)?- May reveal the taking of certain medications (*e.g.*, sedating medications) that could impact a PIV driver's ability to drive PIVs in a safe manner; may reveal prior history of incapacitation; may assist with the determination of how soon after surgery a PIV driver may resume driving.

- High blood pressure?- May reveal the taking of certain medications (*e.g.*, sedating medications) that could impact a PIV driver's ability to drive PIVs in a safe manner; may reveal other cognitive or neurological issues; correlation between high blood pressure and stroke.

- Muscular disease?- May reveal the taking of certain medications (*e.g.*, sedating medications) that could impact a PIV driver's ability to drive PIVs in a safe manner; may reveal issues relating to the steering, handling, and controlling of a PIV; may reveal a restriction in a PIV driver's movement.

- Shortness of breath?- May reveal an underlying medical condition or the taking of certain medications (*e.g.*, sedating medications) that could impact a PIV driver's ability to drive PIVs in a safe manner; may reveal prior history of incapacitation; may assist with the determination of cardiac disease or related issues.

- Fainting, dizziness?- May reveal an underlying medical condition or the taking of certain medications (*e.g.*, sedating medications) that could impact a PIV driver's ability to drive PIVs in a safe manner; may reveal prior history of incapacitation; may reveal issues relating to the steering, handling, and controlling of a PIV.

- Sleep disorders, daytime sleepiness, loud snoring?- May reveal an underlying medical condition or the taking of certain medications (*e.g.*, sedating medications) that could impact a PIV driver's ability to drive PIVs in a safe manner; may reveal prior history of incapacitation; may reveal decreased reaction time; may reveal issues relating to the steering, handling, and controlling of a PIV.

- Afraid of heights?- May reveal the taking of certain medications (*e.g.*, sedating medications) that could impact a PIV driver's ability to drive PIVs in a safe manner; may reveal issues whether the employee can use and operate an aerial manlift safely; may reveal issues relating to a PIV driver's ability to ascend heights in order to safely egress from a potentially hazardous area.

- Stroke or paralysis?- May reveal an underlying medical condition or the taking of certain medications (*e.g.*, sedating medications) that could impact a PIV driver's ability to drive PIVs in a safe manner; may reveal prior history of incapacitation; may reveal issues relating to the steering, handling, and controlling of a PIV.

- Missing or impaired hand, arm, foot, leg, toe, finger?- May reveal issues relating to the steering, handling, and controlling of a PIV; may reveal a restriction in a PIV driver's movement.

- Broken bone or joint injury or joint problems?- May reveal issues relating to the steering, handling, and controlling of a PIV; may reveal a restriction in a PIV driver's movement.

- Pain and/or treatment for injury to hands, wrists, elbows, shoulders, hips, knees, ankles or feet?- May reveal issues relating to the steering, handling, and controlling of a PIV; may reveal a restriction in a PIV driver's movement; underlying medical conditions often manifest in the form of pain.

- Lung disease, emphysema, asthma, chronic bronchitis, sinus problems?- May reveal prior history of incapacitation (*e.g.*, asthma attacks); may reveal the taking of certain medications that often are stimulants that could impact a PIV driver's ability to drive PIVs in a safe manner.

- Do you or did you smoke? If so, how long?- May reveal prior history of incapacitation (*e.g.*, asthma attacks) as a result of smoking.

- Kidney disease/dialysis?- May reveal the taking of certain medications (*e.g.*, sedating medications) that could impact a PIV driver's ability to drive PIVs in a safe manner; may reveal history of muscle paralysis, kidney failure, dizziness, and other issues that could impact a PIV driver's ability to drive PIVs in a safe manner; may reveal issues relating to the steering, handling, and controlling of a PIV.

- Liver disease?- May reveal the taking of certain medications (*e.g.*, sedating medications) that could impact a PIV driver's ability to drive PIVs in a safe manner; may reveal history of muscle paralysis, liver failure, dizziness, and other issues that could impact a PIV driver's ability to drive PIVs in a safe manner; may reveal issues relating to the steering, handling, and controlling of a PIV.

- Digestive problems?- May reveal the taking of certain medications (*e.g.*, sedating medications) that could impact a PIV driver's ability to drive PIVs in a safe manner; may reveal history of ulcers.

- Diabetes/elevated blood sugar?- May reveal history of lost consciousness, loss of vision, stroke, disorientation, or drowsiness; may reveal whether the PIV driver suffers from uncontrolled hyperglycemia.

- Nervous/psychiatric disorders (e.g. depression)?- May reveal the taking of certain medications (*e.g.*, sedating medications) that could impact a PIV driver's ability to drive PIVs in a safe manner; may reveal issues relating to a PIV driver's reasoning, levels of attention, and judgment; may also reveal issues relating to drowsiness, dizziness, confusion, and loss of functional control.

- Loss of or altered consciousness?- May reveal issues relating to a PIV driver's reasoning, levels of attention, and judgment; may also reveal issues relating to drowsiness, dizziness, confusion, and loss of functional control.

- Spinal/back or neck injury or disease?- May reveal issues relating to the handling and controlling of a PIV; may reveal a restriction in a PIV driver's movement; may reveal a PIV driver's ability to withstand any sudden back-and-forth or jolting movements that may occur in driving a PIV.

- Chronic low back pain?- May reveal issues relating to the handling and controlling of a PIV; may reveal a restriction in a PIV driver's movement; may reveal a PIV driver's ability to withstand any sudden back-and-forth or jolting movements that may occur in driving a PIV.

- Regular, frequent alcohol use?- May reveal issues relating to the steering, handling, and controlling of a PIV; may reveal issues relating to liver disease.

- Narcotic or habit forming drug use?- May reveal issues relating to the steering, handling, and controlling of a PIV.

- Taking any medications on a regular basis?- May reveal an underlying medical condition or the taking of certain medications (*e.g.*, sedating medications) that could impact a PIV driver's ability to drive PIVs in a safe manner.

**INTERROGATORY NO. 5** Please state whether Defendant contends that each of the thirty-four (34) inquiries regarding health history on the Medical Examination/Fit-For-Duty questionnaire Defendant had any concerns before requiring Plaintiff to complete the Medical Examination/Fit-For-Duty questionnaire about his anticipated answer and, if so, the material facts supporting those concerns, the identity of those who raised and/or corroborated those concerns, the date(s) when each raised and/or corroborated those concerns, and the nature and/or result of any investigation Defendant made into those concerns.

**ANSWER:** Defendant objects to this Interrogatory because it is vague, ambiguous, and confusing as to how "inquiries" could have "concerns."

**INTERROGATORY NO. 6:** Please state each material reason Defendant had for requiring Plaintiff and his co-workers to complete the Medical Examination/Fit-For-Duty questionnaire; in what way the answers to the questionnaire provided information Defendant needed and could not obtain through written and/or driving tests, job performance evaluations, medical examinations, and/or observation of job performance; how Defendant ensured that the questionnaire elicited information related to the competent and/or safe performance of the job duties of those employees to whom the questionnaire was submitted.

**ANSWER:** Defendant objects to this Interrogatory in that it is irrelevant if the information requested through the Medical Examination/Fit-For-Duty questionnaire could have been obtained through "written and/or driving tests, job performance evaluations, medical examinations, and/or observation of job performance." Subject to and without waiving this objection or the General Objections, Defendant states that its Medical Examination/Fit-For-Duty questionnaire and certification process as a whole constituted Defendant's method for addressing its concern that employees who operate PIVs have the ability to do so safely. Defendant strives to maintain a safe workplace, and its Medical Examination/Fit-For-Duty questionnaire and certification process as a whole helps to achieve that goal by screening PIV drivers for medical conditions that may interfere with their ability to drive PIVs safely. Further answering, Defendant states that the inquiries of the questionnaire were tailored to assist Defendant in its assessment of whether its PIV drivers were capable of driving PIVs in a safe manner and what to do in case of injury. Moreover, Defendant does not automatically exclude employees from driving a PIV by virtue of having a certain medical condition as marked in the questionnaire response. Rather, the employee discusses the condition with the occupational health nurse and/or company medical provider so that more information can be obtained about how such condition could impact the employee's ability to drive a PIV in a safe manner. *See also* Answer to Interrogatory No. 4.

**INTERROGATORY NO. 7:** Please state how Defendant ensured that the information collected in response to Medical Examination/Fit-For-Duty questionnaire had a limited dissemination, indicating to whom, for what purpose, and with what restrictions dissemination was made.

**ANSWER:** Defendant objects to this Interrogatory because it is irrelevant and not reasonably calculated to lead to the discovery of relevant or admissible evidence in that Defendant's efforts to "ensure[] . . . a limited dissemination" of the information obtained through the certification process have no bearing on the issues in this case. Subject to and without waiving this objection or the General Objections, Defendant states that information obtained in response to the Medical Examination/Fit-For-Duty questionnaire is reviewed by the occupational health nurse and/or company medical provider and is maintained in confidential medical files in Whirlpool's Health Center. Access to Whirlpool's Health Center, which is a locked facility, is limited; in fact, employees in Human Resources do not have keys to the Health Center.

**INTERROGATORY NO. 8:** Please state whether Defendant exempted any employee from answering the Medical Examination/Fit-For-Duty questionnaire and, if so, the identity of each employee, the identity of the person who decided to exempt that employee, the material reasons for exempting that employee, and/or the process by which an exemption was given.

**ANSWER:** No employee whose job requires the ability to drive a PIV has been exempted from answering the Medical Examination/Fit-For-Duty questionnaire.

**INTERROGATORY NO. 9:** Please state how, from January 1, 2001, to the time before requiring answers to the Medical Examination/Fit-For-Duty questionnaire, Defendant ensured that Plaintiff and his coworkers could operate a powered industrial vehicle at Defendant's workplace in a safe, proper, and/or unobjectionable manner, and please state whether Defendant did not believe what it had done to ensure that operation was sufficiently effective, and, if so, please describe the material facts supporting that belief, how Defendant came to that belief, the identity of Defendant's employees who formed that belief, and the steps taken in response to that belief to better ensure such operation.

**ANSWER:** Defendant objects to this Interrogatory because it is vague and ambiguous as to the phrase "unobjectionable operation," calls for an exhaustive narrative of information, and because an inquiry as to how Defendant conducted its certification process during the time period referred to in this Interrogatory is irrelevant and not reasonably calculated to lead to the discovery of relevant or admissible evidence. Subject to and without waiving this objection of the General Objections, Defendant refers Plaintiff to the Jeep Driver's Questionnaire and related documents produced contemporaneously herewith. Further answering, Defendant states that the Fit-For-Duty certification process that applied to Plaintiff was created in response to workplace accidents and "near misses" involving PIVs. Furthermore, the certification process was created to ensure compliance with OSHA. OSHA inquired regarding Defendant's process for certifying drivers of PIVs in 2008 and specifically approved Defendant's certification process, which includes the Medical Examination/Fit-For-Duty questionnaire at issue in this case.

**INTERROGATORY NO. 10:** For the period from January 1, 2005, to the date of the answers to these Interrogatories, please state whether an applicant and/or employee of Defendant ever communicated to Defendant concern that its inquiries about health conditions and/or medical history were inappropriate, and, if so, please identify that individual, state when, in what form, and the content of each communication, and/or describe the entire response Defendant gave.

**ANSWER:** Defendant objects to this Interrogatory because the existence or non-existence of prior complaints from applicants or employees regarding Defendant's certification process is irrelevant and not reasonably calculated to lead to the discovery of relevant or admissible evidence. Subject to and without waiving this objection or the General Objections, Defendant states that Alfred Lange and Dave Evanivich, who are both currently employed by Defendant, expressed their feelings to Alan Ahle, Value Stream Manager, that the Medical Examination/Fit-For-Duty questionnaire asked more questions than what was necessary. Mr. Lange and Mr. Evanivich expressed these feelings to Mr. Ahle about the same time that Plaintiff expressed his objections to completing the questionnaire. After Mr. Ahle explained that completion of the questionnaire was a job requirement and necessary to assess the employee's ability to drive a PIV safely, both Mr. Lange and Mr. Evinich completed the questionnaire.

**INTERROGATORY NO. 11:** Please state whether Defendant continues to require employees to complete the entire Medical Examination/Fit-For-Duty questionnaire Plaintiff and his coworkers were required to complete, and, if not, please state the material reasons Defendant stopped doing so, the date on which the Defendant made and/or implemented that decision, the relationship, if any, of that decision to Plaintiff's lawsuit, and the identity of each employee of Defendant who made that decision.

**ANSWER:** Defendant objects to this Interrogatory because it is irrelevant and not reasonably calculated to lead to the discovery of relevant or admissible evidence. To the extent Plaintiff is seeking such information to establish that the certification process that existed during his employment violated the Americans with Disabilities Act, such requested information could not be used and would be barred by Federal Rule of Evidence 407. Subject to and without waiving these objections or the General Objections, Defendant states that it continues to require its PIV drivers to complete the entire Medical Examination/Fit-For-Duty questionnaire that is at issue in this case.

**INTERROGATORY NO. 12:** Please state when Defendant received notice that Plaintiff had filed his first charge with the Equal Employment Opportunity Commission and the identity of each employee of Defendant who received that notice and/or to whom the fact that the charge was made and/or received, and/or the charge itself was transmitted, indicating the date, content, and/or purpose of that transmission, and the response, if any, to that transmission, including the date and content of subsequent communications about the charge.

**ANSWER:** Defendant objects to this Interrogatory because it is vague, ambiguous, and confusing. Subject to and without waiving this objection or the General Objections, Defendant states that Marc Schulz received notice of Plaintiff's charge filed with the Equal Employment Opportunity Commission on or about February 4, 2009. *See also* letter from the Ohio Civil Rights Commission to Bill Townsend dated January 28, 2009 produced contemporaneously herewith.

**INTERROGATORY NO. 13:** Please state each material reason Defendant had for discharging Plaintiff, identifying the decisionmaker(s) and each individual who gave input to the decisionmaker regarding the discharge; each date when the decision to discharge Plaintiff was

considered; and whether the decisionmaker(s) knew on each date that Plaintiff had complained about being required to complete the Medical Examination/Fit-For-Duty questionnaire.

**ANSWER:** Defendant objects to this Interrogatory as being overly broad in that it seeks a listing of "each date when the decision to discharge Plaintiff was considered" and further objects to this Interrogatory to the extent it calls for an exhaustive narrative. Subject to and without waiving these objections or the General Objections, Defendant states that it considered terminating Plaintiff's employment upon Plaintiff's refusal to comply with Defendant's requirement for its PIV drivers to undergo its certification process and complete the Medical Examination/Fit-For-Duty questionnaire. The certification process constituted Defendant's method for making sure that all of its PIV drivers were capable of driving PIVs in a safe manner. Plaintiff refused to undergo this process and complete the questionnaire.

Bill Townsend, Whirlpool's Human Resources Director, ultimately approved the decision to terminate Plaintiff's employment and was aware at that time that Plaintiff objected to completing the Medical Examination/Fit-For-Duty questionnaire. Marc Schulz (Human Resources Generalist), Alan Ahle (Value Stream Manager), and Greg Frisch (another Value Stream Manager at the time) recommended termination to Mr. Townsend. *See also* suspension and termination documents produced contemporaneously herewith.

**INTERROGATORY NO. 14:** Please state the factual basis for Defendant's contention that Plaintiff failed to comply with the statute of limitations governing his claim.

**ANSWER:** As an affirmative defense to Plaintiff's Complaint, Defendant stated that "[t]o the extent" Plaintiff failed to bring his claims within the applicable statute of limitations, his claims would be barred. Further answering, Defendant states that discovery had not yet commenced at the time when Defendant filed its Answer and Affirmative Defenses. Information and documents learned of and/or obtained during discovery could substantiate Defendant's affirmative defense that "[t]o the extent Plaintiff has failed to institute this action within the time required under the applicable statute of limitations, his claims for relief are barred."

As to Objections Stated Herein:

[signature]

William J. Shin

RESPECTFULLY SUBMITTED,

WHIRLPOOL CORPORATION

By: [signature]

One of Its Attorneys

Michael W. Jackson (Local Counsel)
ANSPACH MEEKS ELLENBERGER LLP
300 Madison Avenue, Suite 1600
Toledo, OH 43604
Telephone: 419.246.5757
Facsimile: 419.321.6979
Email: mjackson@anspachlaw.com

Adam C. Wit (Admitted *Pro hac vice*)
David L. Christlieb (Admitted *Pro hac vice*)
William J. Shin
LITTLER MENDELSON, P.C.
321 North Clark Street, Suite 1000
Chicago, IL 60654
Telephone: 312.372.5520
Facsimile: 312.372.7880
Email: awit@littler.com
dchristlieb@littler.com
wshin@littler.com

*Attorneys for Whirlpool Corporation*
Dated: September 1, 2010

**CERTIFICATE OF SERVICE**

William J. Shin, an attorney, hereby certifies that on September 1, 2010, he served a true and correct copy of ***Defendant's Answers to Plaintiff's First Set of Interrogatories***, via email and U.S. Mail, postage prepaid, upon the following individuals:

John S. Marshall
Edward R. Forman
MARSHALL AND MORROW LLC
111 West Rich Street, Suite 430
Columbus, OH 43215-5296

Laren E. Knoll
WILLIS & WILLIS CO., LPA
4653 Trueman Blvd., Suite 100
Hilliard, OH 43026

Louis A. Jacobs
668 Rayo del Sol
Desert Hot Springs, California 92240-1871

William J. Shin

**VERIFICATION**

I, Marc Schulz, state that I have read Defendant's Answers to Plaintiff's First Set of Interrogatories. Based on my knowledge and information provided to me in my capacity as Human Resources Generalist, I hereby verify that the Answers are true and correct to the best of my knowledge and belief.

Marc Schulz

Subscribed and sworn to
before me this 11 day
of August, 2010

Notary Public
my commission expires 9-11-2010